UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NIARA BURTON, *a/k/a* | : | CIVIL NO: 1:19-CV-01574 |
| *Herman Burton*, | : | |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| | : | |
| v. | : | |
| | : | |
| JOHN WETZEL, *et al*., | : | |
| | : | |
| Defendants. | : | |
| | : | |

## MEMORANDUM OPINION

## I. Introduction.

The plaintiff, Niara Burton a/k/a Herman Burton, claims that the defendants retaliated against her because of her constitutionally protected complaints. Currently pending is the remaining defendants' motion for summary judgment as well as Burton's motion for summary judgment. For the reasons set forth below, we will deny both motions for summary judgment.

## II. Background and Procedural History.

On September 11, 2019, Burton, began this action by filing a complaint. The parties subsequently consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned. After we granted the defendants' motion for a more definite statement, Burton filed an

amended complaint on August 12, 2020.  At the time Burton filed the complaint and amended complaint, she was an inmate at the State Correctional Institution at Muncy ("SCI Muncy"), and her claims concern events and conditions at SCI Muncy.  Burton has since been transferred from SCI Muncy; she is currently incarcerated at the State Correctional Institution at Albion.

The amended complaint names eight defendants: (1) John Wetzel, the former Secretary of the Pennsylvania Department of Corrections; (2) David Radziewicz, the Department of Corrections' state-wide compliance manager of the Prison Rape Elimination Act ("PREA"); (3) Wendy Nicholas, the Superintendent of SCI Muncy; (4) William Frantz, a deputy for facilities management at SCI Muncy; (5) Angel Baez-Sprague, PREA Compliance Manager at SCI Muncy; (6) Lt. Sipe, a lieutenant and PREA investigator at SCI Muncy; (7) K.L. Brelsford, a corrections officer at SCI Muncy; and (8) Dawn Santana, a hearing examiner at SCI Muncy.

We liberally construed Burton's amended complaint as containing three claims.  First, Burton claims that all the defendants violated the First Amendment by retaliating against her because she petitioned for redress of her grievances. Second, she claims that defendants Santana, Nicholas, Frantz, and Baez-Sprague violated her right to due process in connection with the disciplinary hearings and decisions against her.  And third, she claims that the failure of defendants Wetzel,

Nicholas, and Radziewicz to take disciplinary or other action to stop the harassment and retaliation against her violated her Eighth Amendment rights.

After considering the defendants' motion to dismiss the amended complaint, we dismissed the claims against the defendants in their official capacities, all claims against defendant Wetzel, and Burton's Eighth Amendment and due process claims. *See docs. 96, 97*.  The remaining claims are Burton's retaliation claims against defendants Radziewicz, Nicholas, Frantz, Baez-Sprague, Sipe, Brelsford, and Santana.

The parties engaged in an extensive course of discovery.  After discovery was completed, the defendants and Burton both moved for summary judgment. Those motions for summary judgment have been fully briefed.

### III.  Summary Judgment Standards.

The parties move for summary judgment under Rule 56(a) of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Through summary adjudication the court may dispose of those claims that do not present a 'genuine dispute as to any material fact' and for which a jury trial would be an empty and unnecessary formality." *Goudy-Bachman v. U.S. Dept. of*

*Health & Human Services*, 811 F. Supp. 2d 1086, 1091 (M.D. Pa. 2011) (quoting Fed. R. Civ. P. 56(a)).

The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). With respect to an issue on which the nonmoving party bears the burden of proof, the moving party may discharge that burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must show a genuine dispute by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. *Celotex*, 477 U.S. at 322.

4

Summary judgment is also appropriate if the nonmoving party provides merely colorable, conclusory, or speculative evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. *Id.* at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248. A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. *Id.* at 248–49.

When "faced with a summary judgment motion, the court must view the facts 'in the light most favorable to the nonmoving party.'" *N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (quoting *Scott v. Harris,* 550 U.S. 372, 380 (2007)). At the summary judgment stage, the judge's function is not to weigh the evidence or to determine the truth of the matter; rather it is to determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at

249.  The proper inquiry of the court "is the threshold inquiry of determining

whether there is the need for a trial—whether, in other words, there are any

genuine factual issues that properly can be resolved only by a finder of fact

because they may reasonably be resolved in favor of either party." *Id.* at 250.

Summary judgment is warranted, after adequate time for discovery, against a

party who fails to make a showing sufficient to establish the existence of an

element essential to that party's case and on which that party will bear the burden

of proof at trial. *Celotex,* 477 U.S. at 322.  "Under such circumstances, 'there can

be no genuine issue as to any material fact, since a complete failure of proof

concerning an essential element of the nonmoving party's case necessarily renders

all other facts immaterial.'" *Anderson v. Consol. Rail Corp.*, 297 F.3d 242, 247 (3d

Cir. 2002) (quoting *Celotex,* 477 U.S. at 323).  "[S]ummary judgment is essentially

'put up or shut up' time for the non-moving party: the non-moving party must

rebut the motion with facts in the record and cannot rest solely on assertions made

in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group, Ltd.*

*v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

Further, a party that moves for summary judgment on an issue for which he

or she bears the ultimate burden of proof faces a difficult road. *United States v.*

*Donovan*, 661 F.3d 174, 185 (3d Cir. 2011).  "[I]t is inappropriate to grant

summary judgment in favor of a moving party who bears the burden of proof at

trial unless a reasonable juror would be compelled to find its way on the facts needed to rule in its favor on the law." *El v. Se. Pa. Transp. Auth.,* 479 F.3d 232, 238 (3d Cir. 2007) (footnote omitted).  A party who has the burden of proof must persuade the factfinder that his propositions of fact are true, and "if there is a chance that a reasonable factfinder would not accept a moving party's necessary propositions of fact, pre-trial judgment cannot be granted." *Id.*  "Specious objections will not, of course, defeat a motion for summary judgment, but real questions about credibility, gaps in the evidence, and doubts as to the sufficiency of the movant's proof, will." *Id.*

## IV.  Discussion.

The remaining claims in this case are retaliation claims.  Both the defendants and Burton move for summary judgment as to those claims.  We will begin by addressing the defendants' motion for summary judgment.  Before we address the defendants' arguments as to the merits of each claim, we address the argument by defendants Radziewicz, Nicholas, Frantz, and Baez-Sprague that they are entitled to summary judgment because they were not personally involved in the alleged violation of Burton's rights.

### A.  Personal Involvement.

Defendants Radziewicz, Nicholas, Frantz, and Baez-Sprague contend that they should be granted summary judgment as to the claims against them because they were not personally involved the alleged violations of Burton's rights.

Liability in a 42 U.S.C. § 1983 action is personal in nature, and to be liable, a defendant must have been personally involved in the wrongful conduct.  Thus, respondeat superior cannot form the basis of liability. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018).  In other words, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).  And so, a constitutional deprivation cannot be premised merely on the fact that the defendant was a supervisor when the incidents set forth in the complaint occurred. *See Alexander v. Forr*, 297 F. App'x 102, 104–05 (3d Cir. 2008).  Rather, "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Third Circuit has "recognized that 'there are two theories of supervisory liability, one under which supervisors can be liable if they established and maintained a policy, practice or custom which directly caused the constitutional harm, and another under which they can be liable if they participated in violating

8

plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations.'" *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010)).

As we pointed out in connection with the defendants' motion to dismiss, the amended complaint can reasonably be construed as alleging that defendants Radziewicz, Nicholas, Frantz, and Baez-Sprague were personally involved under the knowledge-and-acquiescence strand of supervisory liability.  "Where a supervisor with authority over a subordinate knows that the subordinate is violating someone's rights but fails to act to stop the subordinate from doing so, the factfinder may usually infer that the supervisor 'acquiesced' in (i.e., tacitly assented to or accepted) the subordinate's conduct." *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1294 (3d Cir. 1997) (footnote omitted), *abrogated on other grounds*, *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). We also previously pointed out that "[t]he 'after-the-fact' review of a grievance, or an inmate's dissatisfaction with a grievance response, do not establish the involvement of officials and administrators in any underlying constitutional deprivation." *Stuart v. Murray*, No. 1:18-CV-0430, 2020 WL 6710209, at *6 (M.D. Pa. Nov. 16, 2020); *see also Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) ("Although the complaint alleges that Appellees responded

inappropriately to Brooks's later-filed grievances about his medical treatment, these allegations do not establish Appellees' involvement in the treatment itself."). But in some circumstances, a grievance or appeal may be enough to put an official on notice of an alleged continuing violation of a prisoner's rights, and, therefore, may show actual knowledge of an alleged constitutional violation and acquiescence in the events forming the basis of a prisoner's claims. *See Johnson v. Wireman*, 809 F. App'x 97, 100, 100 n.20 (3d Cir. 2020) (refusing to dismiss two defendants for lack of personal involvement in claims that the prisoner's religious rights were being violated based, in part, on their responses to his grievances; noting that the prisoner did not merely allege that the defendants "denied the grievances, which would amount to an impermissible *respondeat superior* theory of liability"; and suggesting that the grievances and responses were enough to sufficiently allege actual knowledge and acquiescence); *Parkell*, 833 F.3d at 337 n.14 ("Our oft-cited holding in *Rode v. Dellarciprete,* 845 F.2d 1195, 1208 (3d Cir. 1988) that the mere <u>filing</u> of a grievance does not show actual knowledge by a supervisor is not applicable, as Phelps's letters show that he actually had reviewed the grievances."); *Diaz v. Palakovich,* 448 F. App'x 211, 215 (3d Cir. 2011) (holding that summary judgment for the defendants was improper where the defendants had knowledge through the grievance process of an alleged ongoing practice of improper handling of the plaintiff's mail and the defendants failed to

take corrective action); *Sutton v. Rasheed*, 323 F.3d 236, 249–50 (3d Cir. 2003) (concluding that summary judgment was not warranted as to a defendant who received from the prisoner a letter, styled as a final appeal of a grievance, who referred the issue to another, and who then responded by denying the grievance appeal); *Atkinson v. Taylor,* 316 F.3d 257, 270-271 (3d Cir. 2003) (refusing to hold as a matter of law that correspondence or conversations with prison officials do not constitute sufficient evidence of actual knowledge and acquiescence).

Here, although defendants Radziewicz, Nicholas, Frantz, and Baez-Sprague contend that they are entitled to summary judgment based on lack of personal involvement, they have set forth no facts in their statement of material facts regarding what involvement, if any, they had in connection with the misconducts at issue here.

Local Rule 56.1 requires a party moving for summary judgment to file "a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. Pa. L.R. 56.1.  The Rule, in turn, requires the non-moving party to file "a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required [by the moving party], as to which it is contended that there exists a genuine issue to be tried." *Id.*  The "[s]tatements of material facts in support of, or in opposition to, a motion shall

include references to the parts of the record that support the statements," and "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed admitted unless controverted by the statement required to be served by the opposing party." *Id.* "Local Rule 56.1 was promulgated to bring greater efficiency to the work of the judges of the Middle District." *Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613 (3d Cir. 2018). "[T]he Rule 'is essential to the Court's resolution of a summary judgment motion' due to its role in 'organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side proposed to prove a disputed fact with admissible evidence.'" *Id.* (citations omitted).

The defendants filed a statement of material facts with citations to the record, *see doc. 199*, and supporting documents, *see docs. 199-1–199-19.* But that statement of material facts contains no facts regarding how, if at all, defendants Radziewicz, Nicholas, Frantz, and Baez-Sprague were involved in the misconduct process at issue here. The defendants have not complied with Local Rule 56.1 in this regard. Local Rule 56.1 recognizes that it is counsel's duty to set forth the facts; it is not the court's duty to scour the record to pull the facts out. Given that defendants Radziewicz, Nicholas, Frantz, and Baez-Sprague have failed to set forth the facts surrounding what, if any, involvement they had in the misconduct

process, they have not met their burden of showing that they are entitled to summary judgment.

## B.  The Retaliation Claims.

Before we discuss the merits of Burton's retaliation claims, we set forth the standards applicable to such claims.  "Retaliating against a prisoner for the exercise of his constitutional rights is unconstitutional." *Bistrian v. Levi*, 696 F.3d 352, 376 (3d Cir. 2012).  Retaliation claims are judged against exacting legal standards.  "To state a claim for retaliation, a prisoner must allege that: (1) he was engaged in constitutionally protected conduct, (2) 'he suffered some "adverse action" at the hands of prison officials,' and (3) 'his constitutionally protected conduct was "a substantial or motivating factor" in the decision' to take that action." *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)).

"Once a prisoner has made his *prima facie* case, the burden shifts to the defendant to prove by a preponderance of the evidence that [he or she] 'would have made the same decision absent the protected conduct for reasons reasonably related to penological interest.'" *Carter v. McGrady,* 292 F.3d 152, 158 (3d Cir. 2002) (quoting *Rauser*, 241 F.3d at 334).  Prison officials may prevail by proving that they would have made the same decision absent the protected conduct for

reasons reasonably related to a legitimate penological interest. *Rauser,* 241 F.3d at 334. "This is often referred to as the 'same decision defense.'" *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016).

The defendants assert the same decision defense as to each of Burton's claims. Thus, we discuss that defense here in some detail, and we explain why we disagree with the defendants' interpretation of that defense.

Based on the "same decision defense," in *Carter*, the United States Court of Appeals for the Third Circuit affirmed the grant of summary judgment to prison officials on claims that the officials took disciplinary actions against the prisoner for his legal activities. 292 F.3d at 159. The court in *Carter* concluded that, based on the "sizeable quantum" of evidence of misconduct on the part of the prisoner, even if the prison officials were motivated by animus to jailhouse lawyers, the prisoner's offenses "were so clear and overt" such that there was no genuine issue of material fact that the officials' actions were reasonably related to legitimate penological interests and the prisoner "would have been disciplined notwithstanding his jailhouse lawyering." *Id.* at 158–59.

In *Watson*, the Third Circuit clarified that "not every violation of prison protocols supported by some evidence will bar a First Amendment retaliation claim." 834 F.3d at 431 (Ambro, J, concurring). Rather, *Watson* explained that while "most prisoner's retaliation claims will fail if the misconduct charges are

supported by the evidence[,]" the court must "evaluate . . .'the quantum of

evidence' of the misconduct to determine whether the prison officials' decision to

discipline an inmate for his violations of prison policy was within the broad

discretion we must afford them." *Id*. at 425–26.  The court contrasted the force of

the evidence in *Carter* with the force of the evidence as to Watson:

> . . .  Given the force of the evidence that Carter was guilty of
> receiving stolen property, we held that the there was no genuine
> issue of material fact that his misconduct citation was
> reasonably related to legitimate penological interests, and that
> Carter would have been disciplined notwithstanding his
> jailhouse lawyering.
>
> Watson's situation is different. Watson's broken radio was not
> so "clear and overt" a violation that we can conclude that he
> would have been written up if he had not also given prison
> officials "a hard time."  The radio had allegedly been in the
> same condition for more than a year.  Moreover, there is
> evidence that other inmates had radios with loose or broken
> antennas, but those items were not confiscated and the inmates
> did not receive a misconduct.  Finally, Kline did not charge
> Watson with a misconduct when he confiscated the radio.
> Accordingly, a reasonable fact finder could conclude that the
> misconduct was issued in retaliation for Watson's statement
> that he was going to file a grievance, and not in furtherance of
> legitimate penological goals.

*Id*. at 426 (footnotes omitted).  The court also noted that in a different context it

had previously "held that a plaintiff can make out a retaliation claim even though

the charge against him may have been factually supported":

> . . .  In *Hill v. City of Scranton*, four police officers survived
> summary judgment on their claims that the city had retaliated
> against them by selectively enforcing an ordinance to punish

them for a lawsuit that they had brought even though it was
clear that three officers violated the relevant ordinance.  We
reasoned that it was not necessary for the officers to allege or
prove compliance with the ordinance to prevail on their First
Amendment claim.

*Id.*

The defendants contend that "[a] 'quantum of evidence' sufficient for the

granting of summary judgment is established with a finding of guilt on a

misconduct together with a meaningful statement of the evidence relied on and the

reasons for the actions taken." *Doc. 200* at 6.  They cite *Williams v. Folino*, 664 F.

App'x 144 (3d Cir. 2016), for that proposition.  In *Williams*, the prisoner claimed

that an officer used excessive force against him in retaliation for filing grievances.

*Id*. at 148.  After viewing a video of the incident, the court concluded that it was

apparent that the officer merely escorted the inmate to and from the shower; "the

video is devoid of any evidence of excessive force." *Id*.  Thus, the court

determined that the prisoner failed to present a prima facie case of retaliation

regarding the use of excessive force. *Id*.  The court then turned to the prisoner's

claim that he was issued a misconduct in retaliation for filing grievances. *Id*.  The

misconduct charged the prisoner with lying to an employee based on his claim of

the use of excessive force. *Id*.  After reiterating that the video showed no evidence

of excessive force, the court reasoned and held:

In addition, a legitimate misconduct for lying to prison staff is
not retaliatory, and a misconduct report is legitimate so long as

it is issued for "reasons reasonably related to a legitimate penological interest." <u>Rauser</u>, 241 F.3d at 334.  In evaluating the legitimacy of a misconduct report, this Court considers "the quantum of evidence of the misconduct to determine whether the prison officials' decision to discipline an inmate for his violations of prison policy was within the broad discretion we must afford them." *Watson v. Rozum*, 834 F.3d 417, 426 (3d Cir. 2016).  A finding of misconduct must include "a meaningful written statement of the evidence relied on and the reasons for the action taken." *Dyson v. Kocik*, 689 F.2d 466, 467 (3d Cir. 1982).[1]

Here, the misconduct conviction is supported by a written statement of the evidence relied on in concluding that Williams lied in submitting the grievance.  Furthermore, issuing a misconduct report based upon filing a false grievance is reasonably related to the legitimate penological interest of discouraging the filing of false or facetious grievances.  Therefore, Defendants have satisfied their burden of presenting a "quantum of evidence" of misconduct.  <u>See</u> <u>Watson</u>, 834 F.3d at 426.  Accordingly, the misconduct was legitimate and not retaliatory, and summary judgment was properly granted as to this claim.

*Id.* at 148–49 (footnote omitted).[2]

---

[1] Dyson was a due process case: the court in that case stated that  under *Wolff v. McDonnell*, 418 U.S. 539 (1974), "a misconduct conviction must include a meaningful written statement of the evidence relied on and the reasons for the action taken." *Dyson*, 689 F.2d at 467.

[2] The defendants also cite *Harris v. Giroux*, No. 1:16-CV-0038, 2019 WL 330459 (W.D. Pa. Jan. 25, 2019).  In *Harris*, the district court cited *Williams* for the proposition that "[a] finding of guilt on a misconduct charge, combined with 'a meaningful written statement of the evidence relied on and the reasons for the action taken,' establishes a 'quantum of evidence' of misconduct sufficient to warrant summary judgment." *Id*. at * 10 (quoting *Williams,* 664 F. App'x. at 148–49).  But the court in *Harris*, nevertheless, also stated that "[t]ypically, the quantum of evidence in these cases includes testimony from other corrections officers and/or other inmates, a written statement of the evidence relied on, the

We reject the defendants' suggestion that anytime a prisoner is found guilty of a misconduct and there is a meaningful statement of the evidence and the reasons for that finding, there is a quantum of evidence that necessarily satisfies the same decision defense.  As the discussion of *Williams* set forth above shows, *Williams* did not hold that, and in *Williams* the court considered evidence—a video—in addition to the finding of guilt and the statement of the evidence and reasons accompanying such finding.  Moreover, *Williams* is an unpublished decision, and, thus, is not binding authority.  And the defendants' interpretation of *Williams* is at odds with *Watson*, which, as set forth above, rejected importing the due process standard of some evidence and clarified that "a plaintiff can make out a retaliation claim even though the charge against him may have been factually supported." *Watson*, 834 F.3d at 426.  Rather, under *Watson*, we consider whether there was "so 'clear and overt' a violation that he would have been written up if he

---

reasons for the action taken, and video footage of the incident under review." *Id*. at 11 (citations omitted).  And after observing that "[t]he hearing examiner in this case based his decision on a 'preponderance of evidence,' but no evidence or testimony from other corrections officers in support of [the defendant's] version of events was offered," that "the hearing examiner's report [could not] be considered a 'meaningful written statement of the evidence relied on and the reasons for the action taken,'" and that "the video footage revealed nothing," the court concluded that "given the minimal quantum of evidence supporting the guilt on [the misconduct], a genuine issue of material fact exists whether there was a legitimate penological reasons for the issuance of the misconduct charge, thereby precluding the award of summary judgment to the Defendants." *Id*. at * 11–12.

had not also" engaged in protected conduct. *Id*.  In so considering that question, we consider not only the strength of the evidence of a violation of prison rules but also other circumstances such as whether the charging officer knew of the violation but did nothing about it until after the prisoner engaged in protected conduct and whether other inmates who commit the same violation are charged with misconduct. *See id*. (observing that Watson's "radio had allegedly been in the same condition for more than a year" ant that "there is evidence that other inmates had radios with loose or broken antennas, but those items were not confiscated and the inmates did not receive a misconduct").

It is the defendants' burden to prove the same decision defense. *See Rauser*, 241 F.3d at 333–34 (adopting the burden-shifting framework set forth by the Supreme Court in *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977), in connection with a retaliation claim in the public-employment context, and holding that "once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest").  The defendants "must prove by a preponderance of the evidence that [they] 'would have made the same decision absent the protected conduct for reasons reasonably related to penological interest.'" *Carter*, 292 F.3d

19

at 158 (quoting *Rauser*, 241 F.3d at 334). And "[i]n view of the standard at summary judgment, that means the [the defendants], to prevail on causation, 'must present evidence of such quality that no reasonable juror could conclude that the protected activity was the but-for cause of [the adverse action]." *Baloga v. Pittston Area School Dist.*, 927 F.3d 742, 759 (3d Cir. 2019) (quoting *Hill*, 411 F.3d at 126 n.11).

Having set forth the standards applicable to Burton's retaliation claims, we turn to the merits of those claims. The parties agree that Burton is asserting seven instances of retaliation. We address each in turn.

### 1. February 23, 2019 Cell Search and Misconduct Report.

Burton made a report of sexual harassment against defendant Brelsford, which was investigated internally. *Doc. 199* ¶ 2. Subsequently, Burton received a misconduct from defendant Brelsford for contraband after a cell search on February 23, 2019. *Id.* ¶ 3. Burton admits that she was in possession of contraband at that time. *Id.* ¶ 4.

These are the only facts set forth by the defendants regarding the February 23, 2019 cell search and misconduct report.[3] Based on these facts, the defendants

---

[3] Burton does not dispute these facts, but she asserts additional facts. *See doc. 222* ¶¶ 2–4. In fact, Burton does not explicitly dispute any of the facts set forth by the defendants, but she adds additional facts. *See doc. 222 passim*.

contend that they are entitled to summary judgment as to Burton's claims based on this incident.

As to the cell search, the defendants suggest that the cell search was not an adverse action.  "[A] prisoner litigating a retaliation claim must show that he suffered some 'adverse action' at the hands of the prison officials." *Rauser*, 241 F.3d at 333.  "[A] prisoner-plaintiff satisfies this requirement by demonstrating that the action 'was sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights.'" *Id*. (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)).  "The effect of the alleged conduct on the [plaintiff's] freedom of speech need not be great in order to be actionable, but it must be more than *de minimis." McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006) (internal quotations and citations omitted).

The defendants' argument (if it can be called an argument) in full regarding the cell search is:  "It should also be noted that a cell search as an adverse action is legally insufficient to sustain a retaliation claim regardless." *Doc. 200* at 7.  And in support, the defendants cite one unpublished decision: *Dickerson v. Gordon*, No. 1:13-CV-1993, 2015 WL 5785575 (M.D. Pa. Sept. 30, 2015).  In that case, the court stated that "courts have consistently held that a cell search is not an 'adverse action' for retaliation purposes." *Id*. at * 6 (citing unpublished cases).  Other courts, also in unpublished decisions, have similarly held. *See, e.g.*, *Beale v.

*Overtone*, No. CV 13-15, 2017 WL 4276747, at *2 (W.D. Pa. Sept. 27, 2017)

("Third Circuit precedent is clear: 'the search of a cell is not a sufficient adverse

action for purposes of a [First Amendment] retaliation claim, irrelevant of whether

it is' done in response to a plaintiff's constitutionally protected conduct." (citations

omitted)).  But there are cases that suggest otherwise. *See e.g.*, *Humphrey v. Sec'y*

*Pennsylvania Dep't of Corr.*, 712 F. App'x 122, 124–25 (3d Cir. 2017) ("We are

doubtful about the District Court's conclusion that Humphrey had not sufficiently

pleaded an adverse action, as a retaliatory search and seizure may be sufficient to

satisfy this prong of the claim."); *Cunningham v. Stamm*, No. 1:20-CV-854, 2023

WL 1818359, at *5 (M.D. Pa. Feb. 8, 2023) (stating that "Stamm's action in

searching Cunningham's cell may constitute a sufficiently adverse action to

support a retaliation claim").

The defendants have not set forth any facts surrounding the nature of the

search at issue here, and they have not attempted to show that the particular search

here does not fit with the definition of an adverse action.  Without more, their

conclusion, supported by one unpublished decision, that a cell search can never be

sufficient to constitute an adverse action is not well taken.  In sum, the defendants

have failed to show that they are entitled to summary judgment as to Burton's

retaliation claim based on the February 23, 2019 cell search.

The defendants also fail to show that they are entitled to summary judgment as to Burton's retaliation claim based on the February 23, 2019 misconduct. The defendants assert the same decision defense as to the misconduct claim contending that Burton's admission that she was in possession of contraband "is more than sufficient to establish the quantum of evidence required to render this misconduct non-retaliatory . . . ." *Doc. 200* at 7. But "a plaintiff can make out a retaliation claim even though the charge against him may have been factually supported." *Watson*, 834 F.3d at 426. And here, like in *Watson*, there is other evidence that casts doubt on whether the misconduct would have been issued in the absence of the protected conduct. Burton testified that defendant Brelsford was aware of the contraband,[4] but she had not issued a misconduct until after Burton engaged in protected activity.[5] Burton also testified that others were not given misconducts

---

[4] The contraband at issue was what has been referred to as a "stinger," which is a homemade device used by inmates to heat water to cook food in a cell. *See doc 199-2* at 40–41 (Burton dep. at 39–40).

[5] Burton testified that prior to Brelsford searching her cell and issuing a misconduct on February 23, 2019, defendant Brelsford was aware that Burton possessed and used a stinger in her cell. *See doc 199-2* at 35, 42 (Burton dep. at 34, 41). According to Burton, on multiple occasions, defendant Brelsford would come by her cell and ask Burton what she was making. *See doc 199-2* at 35–36, 42 (Burton dep. at 34–35, 41). Although defendant Brelsford was aware that Burton possessed a stinger, she did not do anything about it until after Burton made a report about her. *See doc 199-2* at 35 (Burton dep. at 34). Burton also testified that other corrections officers knew she possessed and used a stinger:

for possession of such contraband.[6]  Given, these additional circumstances, we

cannot say as a matter of law that the violation was so clear and overt that Burton

would have been written up if she had not also engaged in protected conduct. *Id*.

That is for the factfinder to determine.  Accordingly, the defendants are not entitled

to summary judgment as to Burton's claim based on the February 23, 2019

misconduct.

### 2.  March 25, 2019 Misconduct Report.

On March 25, 2019, Burton was given a misconduct based on an incident

from the same date, also involving Defendant Brelsford. *Doc. 199* ¶ 5.  Defendant

Santana found Burton guilty on this misconduct; Defendant Santana indicated that

---

> . . . It was various correction officers that knew because I was assigned to Inmate 1 cell, which is directly opposite of the officers' station.  So, they would come by and see that I would be making it.  You can smell it.  Whenever you use a stinger, there's steam.  So, if you're cooking food, you can smell that the food is actually being made.  And I was in a cell directly opposite of the officer's station.  The officers' station was just a step ahead of me.

*Doc 199-2* at 42–43 (Burton dep. at 41–42).

[6] *See doc 199-2* at 44 (Burton dep. at 43) ("Well, typically they don't ever punish people at all.  They typically just throw it away."); *See also doc 199-2* at 45–46 (Burton dep. at 44–45) (testifying that although an inmate could theoretically be punished for a stinger, they typically just throw it away and that the cell restriction that she received was a bit extreme "because typically, they don't even penalize people for that . . . They don't even issue misconducts . . . ").

testimony was taken and that the testimony of the other witnesses was believed rather than Burton's testimony. *Id.* ¶ 6.

These are the only facts set forth by the defendants regarding the March 25, 2019 misconduct report.  Based on these facts, the defendants contend that they are entitled to summary judgment as to Burton's claims based on this incident. They invoke the same decision defense asserting that Burton was found to have committed the misconduct and the hearing examiner explained her reasoning.  But as set forth above, that is not sufficient to establish the same decision defense. Again, *Watson* rejected importing the due process standard of some evidence and clarified that "a plaintiff can make out a retaliation claim even though the charge against him may have been factually supported." *Watson*, 834 F.3d at 426.  And, under *Watson*, we consider whether there was "so 'clear and overt' a violation that [the prisoner] would have been written up if he had not also" engaged in protected conduct. *Id.*  In so considering that question, we consider not only the strength of the evidence of a violation of prison rules but also other circumstances such as whether the charging officer knew of the violation but did nothing about it until after the prisoner engaged in protected and whether other inmates who commit the same violation are charged with misconduct. *See id*. (observing that Watson's "radio had allegedly been in the same condition for more than a year" and that

"there is evidence that other inmates had radios with loose or broken antennas, but those items were not confiscated and the inmates did not receive a misconduct").

Here, given that the defendants have not even set forth the facts surrounding the incident[7] and they assert that they are entitled to summary judgment under an incorrect standard, we cannot say as a matter of law that the violation was so clear and overt that Burton would have been written up if she had not also engaged in protected conduct. Accordingly, the defendants are not entitled to summary judgment as to Burton's claim based on the March 25, 2019 misconduct.

### 3. April 8, 2019 Misconduct Report.[8]

On April 8, 2019, Burton was given a misconduct based on another incident from March 25, 2019. *Doc. 199* ¶ 7; *Doc. 222* ¶ 7. The hearing examiner,

---

[7] Although the defendants have not set forth in their statement of material facts the details surrounding this incident, they have attached the misconduct documents. It is a litigant's duty to make on-point legal arguments and set forth the facts that support his or her contentions. *Rodriguez v. Municipality of San Juan*, 659 F.3d 168, 175 (1st Cir. 2011) ("Judges are not mind-readers, so parties must spell out their issues clearly, highlighting the relevant facts and analyzing on-point authority."); *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in [the record]"). We will not scour the record to pull out facts to support the defendants' position. That is counsel's duty.

[8] In their statement of material facts the defendants refer to this misconduct as the being issued on April 8, 2019, *see doc. 199* ¶ 7, but in their brief, they assert that it was issued on April 9, 2019, *see doc. 200* at 8. The precise date is not material for summary judgment purposes.

Defendant Santana, found Burton guilty of this misconduct, indicating that after observing the video, the allegations made by Burton were demonstrably false. *Doc. 199 ¶ 8; Doc. 222 ¶ 8.*

These are the only facts set forth by the defendants regarding the April 8, 2019 misconduct report. Based on these facts, the defendants contend that they are entitled to summary judgment as to Burton's claims based on this incident for two reasons. First, they contend that an allegation that is false is not protected activity. If this contention is puzzling, it is because again, the defendants have not pointed to any facts surrounding the alleged protected activity. We reiterate that under Local Rule 56.1, it is the defendants' obligation to set forth the facts that show they are entitled to summary judgment. Again, it is not the court's duty to mine the summary judgment record to pull out those facts. Thus, the defendants are not entitled to summary judgment based on their conclusory argument that Burton did not engage in protected activity.

The defendants also in a conclusory manner assert that given that Burton was found guilty by the hearing examiner after the video confirmed that her allegations were false, this "represents the quantum of evidence required for summary judgment" *Doc. 200* at 8. But, as explained above, the fact that the hearing examiner found Burton guilty is not sufficient for the defendants to prove their same decision defense as a matter of law. And again, the defendants have not

set forth the facts surrounding this incident.  They do, however, cite to video evidence. *See docs. 199, 201*—Exhibit E-DVD.  The DVD submitted by the defendants contains four separate videos—two of which are 37 minutes, one of which is 30 minutes, and one of which is 28 minutes.  These videos may be evidence of something—or nothing.  But given that that defendants have not set forth what facts that the videos allegedly show or do not show, we do not know what we are looking for.  And citing to videos does not alleviate the defendants of their duty under Local Rule 56.1 to set forth the material facts that are not in dispute and that form the basis of their motion for summary judgment.  In sum, the defendants have not shown that they are entitled to summary judgment as to Burton's retaliation claim based on the April 8, 2019 misconduct report.

### 4.  September 13, 2019 Misconduct Report.

Burton filed a grievance regarding more alleged interactions with Defendant Brelsford on August 4, 2019. *Doc. 199* ¶ 9.  Defendant Baez Sprague reviewed the videos, and he determined that the events did not occur as Burton claimed. *Id.*  On September 13, 2019, Defendant Sipe issued Burton a misconduct based on the purported fact that Burton's allegations from August 4, 2019 were false. *Id.* ¶ 10. The hearing examiner, Defendant Santana, found Burton guilty; she indicated that

after observing the video, the allegations made by Burton were demonstrably false. *Id.* ¶ 11.

Again, the defendants fail to set forth the material facts surrounding this incident. Nevertheless, they contend that they are entitled to summary judgment because Burton's "misrepresentations" render her activity unprotected and given that Burton was found guilty by the hearing examiner, "this satisfies the quantum of evidence required for summary judgment[.]" *Doc. 200* at 9. They again cite video evidence. *See docs. 199, 201*—Exhibit F-DVD. This DVD submitted by the defendants contains 17 separate videos, ranging from four minute to 60 minutes. But again, given that that defendants have not set forth what facts those videos allegedly show or do not show, we do not know what we are looking for. And citing to videos does not alleviate the defendants or their duty under Local Rule 56.1 to set forth the material facts that are not in dispute and that form the basis of their motion for summary judgment. In sum, the defendants have not shown that they are entitled to summary judgment as to Burton's retaliation claim based on the September 13, 2019 misconduct report.

### 5. November 7, 2019 Misconduct Report.

An internal investigation was done based on an allegation made by Burton that on August 10, 2019, a corrections officer named Girardi put his genital area in

her face. *Doc. 199* ¶ 12.  More specifically, the investigation involved Burton's

contention that while she was seated in the Inmate Dining Room on August 10,

2019, Officer Girardi was standing so close to her that his penis was almost

touching her face. *See doc. 199-11* at 3.  The defendants assert that this allegation

was unfounded as video evidence demonstrated that Burton's recitation of events

was false and the officer in question was never close enough to Burton for this to

occur. *Doc. 199* ¶ 12.  On November 7, 2019, Defendant Sipe issued Burton a

misconduct on the basis that Burton's allegations from August 4, 2019, were

demonstrably false. *Id*. ¶ 13. The hearing examiner, Defendant Santana, found

Burton guilty, indicating that after observing the video, the allegations made by

Burton were indisputably false. *Id*. ¶ 14.

Although the facts set forth by the defendants regarding this incident are

sparce, at least we know the basic subject-matter of the incident.  With this in

mind, we viewed the videos submitted by the defendants.  *See docs. 199, 201—*

Exhibit H-DVD.  The defendants submitted three 20-minute videos from August

10, 2019.  The first appears to show inmates queuing up to go into the dining room

and inmates leaving the dining room: nothing of note happens in this video.  The

other two videos show different camera angles of inmates in the dining room.

Unfortunately, we cannot pick Burton out of the sea of inmates, and we do not

know which officer is Officer Girardi.  Thus, we cannot conclude that these videos

either support Burton's complaint that Officer Girardi stood so close to her that his penis was almost touching her face or the defendants' assertion that Burton was lying about the incident.

The defendants contend that they are entitled to summary judgment because Burton was not engaged in protected conduct given her "apparently purposeful misstatements of the events," and "the quantum of evidence is satisfied regardless." *Doc. 200* at 9.  But given the inconclusive nature of the video evidence, we cannot say as a matter of law that Burton's complaint was not protected activity or that the defendants have established their same decision defense as a matter of law.  Accordingly, the defendants have not shown that they are entitled to summary judgment as to Burton's retaliation claim based on the November 7, 2019 misconduct report.

### 6.  December 7, 2019 Misconduct Reports regarding incident with Officer Shannon.

An internal investigation was done based on an allegation made by Burton, that on July 15, 2019, a corrections officer named Shannon imitated a sexual position and made sexual comments to her. *Doc. 199* ¶ 15.  According to the defendants, this allegation was unfounded, as video evidence demonstrated that Burton's recitation of events was false. *Id.*  On December 7, 2019, Defendant Sipe issued a misconduct to Burton on the basis that Burton's allegations from July 15,

2019, were demonstrably false. *Id.* ¶ 16.  The hearing examiner, Defendant Santana, found Burton guilty on this misconduct, indicating that after observing the video, the allegations made by Burton were demonstrably false. *Id.* ¶ 17.

Again, the defendants set forth only minimal facts, and again they cite to video evidence.  This time, they submitted two DVDs. *See docs. 199, 201—* Exhibit J-DVDs.  The first DVD contains two videos—the first an hour and eight minutes and the second 59 minutes.  The second DVD contains six videos ranging from seven minutes to 31 minutes.  Altogether, the videos show various angles of the dining room and of a stairwell, but the defendants have not pointed the court to the relevant parts of these videos.  Thus, we cannot conclude that these videos either support Burton's complaint that Officer Shannon imitated a sexual position or defendants' assertion that Burton was lying about the incident.  Moreover, the defendants assert that Burton also complained that Officer Shannon made sexual comments to her.  As the videos submitted by the defendants are without sound, without more, it is unclear what relevance they could have in that regard.

We cannot say as a matter of law that Burton's complaint was not protected activity or that the defendants have established their same decision defense as a matter of law.  Accordingly, the defendants have not shown that they are entitled to summary judgment as to Burton's retaliation claim based on the December 7, 2019 misconduct report involving the incident with Officer Shannon.

### 7.  December 7, 2019 Misconduct Report regarding Burton's complaint that officers observed her using the bathroom.

An internal investigation was done based on an allegation made by Burton, that on July 29, 2019, various corrections officers purposely observed her using the bathroom.  *Doc. 199* ¶ 18.  According to the defendants, this allegation was unfounded, as video evidence demonstrated that Burton's recitation of events was false, and the incident could not have occurred as she claimed. *Id.*  On December 7, 2019, Defendant Sipe issued Burton a misconduct on the basis that Burton's allegations from July 29, 2019, were demonstrably false. *Id.* ¶ 19.  The hearing examiner, Defendant Santana, found Burton guilty on this misconduct, indicating that after observing the video, the allegations made by Burton were demonstrably false. *Id.* ¶ 20.

Here, again, the defendants submit two DVDs. *See docs. 199, 201*—Exhibit L-DVDs.  The first DVD contains three videos—each two hours and each of a different area of the prison.  The second DVD contains two videos—one two hours and the other 90 minutes—of two separate areas of the prison.  Again, the defendants have not pointed the court to the relevant parts of these videos.  And the court will not pour through the videos looking for evidence that might support the defendants.  Thus, we cannot conclude that these videos either support Burton's complaint that officers purposely observed her using the bathroom or the defendants' assertion that she was lying.

We cannot say as a matter of law that Burton's complaint was not protected activity or that the defendants have established their same decision defense as a matter of law.  Accordingly, the defendants have not shown that they are entitled to summary judgment as to Burton's retaliation claim based on the December 7, 2019 misconduct report involving officers alleging purposely observing Burton using the bathroom.

In sum, "on a motion for summary judgment, it is the *moving party* who bears the burden of demonstrating the absence of a genuine issue of material fact[.]"  *United States v. Care Alternatives*, ___ F.4th ___, 2023 WL 5494333, at *9 (3d Cir. Aug. 25, 2023).  The defendants have not met that burden.  Accordingly, we will deny their motion for summary judgment.

### 8. Burton's Motion for Summary Judgment.

Burton also moves for summary judgment.  As the plaintiff, Burton has burden of proof as to a prima facie case of retaliation for each of her claims.  "[I]t is inappropriate to grant summary judgment in favor of a moving party who bears the burden of proof at trial unless a reasonable juror would be compelled to find its way on the facts needed to rule in its favor on the law." *El,* 479 F.3d at 238 (footnote omitted).  A party who has the burden of proof must persuade the factfinder that his propositions of fact are true, and "if there is a chance that a

reasonable factfinder would not accept a moving party's necessary propositions of fact, pre-trial judgment cannot be granted." *Id*.  "Specious objections will not, of course, defeat a motion for summary judgment, but real questions about credibility, gaps in the evidence, and doubts as to the sufficiency of the movant's proof, will." *Id*.  Burton has not met the exacting burden of showing that she is entitled to summary judgment.  Accordingly, we will also deny her motion for summary judgment.

## V.  Conclusion.

Based on the foregoing, we will deny the defendants' motion for summary judgment (*doc. 178*), and we will deny Burton's motion for summary judgment (*doc. 170*).  An appropriate order follows.

<u>**S/Susan E. Schwab**</u>
Susan E. Schwab
United States Magistrate Judge

35